**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
                                    :
RONALD WILLIAMS,                    :
                                    :    Civil Action No. 08-622 (MLC)
            Plaintiff,              :
                                    :
        v.                          :         OPINION
                                    :
MICHELLE RICCI, et al.,             :
                                    :
            Defendants.             :
                                    :
```

**APPEARANCES**:

    RONALD WILLIAMS, #401601C, Pro Se, New Jersey State Prison
    P.O. Box 861, Trenton, New Jersey 08625

**COOPER, District Judge**

Plaintiff, Ronald Williams, an inmate now confined at New Jersey State Prison ("NJSP"), seeks to file a Complaint in forma pauperis pursuant to 28 U.S.C. § 1915. Based on Plaintiff's affidavit of poverty, prison account statement and the absence of three qualifying dismissals, see 28 U.S.C. § 1915(g), the Court will grant him in forma pauperis status. As required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court has screened the Complaint for dismissal. For the following reasons, this Court will dismiss the Complaint, without prejudice to the submitting of an amended complaint if Plaintiff believes he can cure the deficiencies.

## BACKGROUND

Plaintiff sues Michelle Ricci, NJSP Associate Administrator; Donald Mee, Assistant Superintendent; Investigator Maginnis; Hearing Officer Maniscalo; Donna Sweeney-Elrose, Supervising

Administrative Analyst for the New Jersey Department of Corrections; and investigator John Doe, for violating his constitutional rights under 42 U.S.C. § 1983 by involuntarily transferring him to an out-of-state prison.

Plaintiff asserts the following facts, which the Court will regard as true for the purposes of this review.  See Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir. 2007).  He alleges that he is serving a 31.5-year New Jersey sentence; in December 2005, corrections officers removed Plaintiff from his cell in the NJSP general population, and placed him in the Management Control Unit without explanation.  He alleges that Maginnis and another investigator with the Special Investigation Division informed him that a relative of another prisoner had told officials that Plaintiff possessed a hidden firearm.  During this and subsequent interviews with the investigators, Plaintiff alleges that he denied having possession or knowledge of a firearm.

Plaintiff asserts that on February 17, 2006, he received a notice indicating that officials intended to seek his non-consensual interstate transfer; on February 24, 2006, Maniscalo held a hearing regarding the transfer.  According to Plaintiff, Maniscalo recommended — and Mee approved — an interstate transfer.  Plaintiff states that he appealed to Ricci, who did not respond.  Plaintiff contends that the transfer decision was based on hearsay and unsubstantiated evidence, and that defendants had options other than an out-of-state transfer available.

2

Plaintiff alleges that on June 26, 2006, defendants transferred him to a Massachusetts prison, where he remained until July 2007.  Plaintiff asserts that he submitted several requests to defendant Sweeney-Elrose seeking to be returned to New Jersey, but she denied each request.  Plaintiff asserts that on July 12, 2007, he was transferred to a Rhode Island prison, but "Plaintiff still ha[s] not been able to have visits from his attorney, family, or adequate legal access to NJ's courts." (Compl. ¶ 39.)  Plaintiff also alleges that he has had difficulty obtaining copies of papers in Rhode Island; Rhode Island officials are "not giving him the proper medical attention" (id. at ¶ 41); and items of personal property are missing.

Plaintiff contends that the transfer violated his due process rights because it was unfair and based on hearsay and speculation; he also had no opportunity to challenge the premise that he cannot be safely incarcerated in New Jersey.  Plaintiff maintains that

> he was transferred for retaliatory reasons by defendant officials, i.e., refusing to cooperate satisfactorily with prison investigation, while housed at N.J.S.P. Trenton, in violation of plaintiff's 8th and 14th amendment rights [and that] defendants deliberately gave an exaggerated response as to the reasons given to administratively justify plaintiff's transfer out the state, and was without alternative options to house plaintiff, without having to send him out of state.

(Compl., Claims for Relief.)

Plaintiff further contends that he is being denied access to courts because his appeal and post-conviction relief petition are

3

pending before the New Jersey courts, but he has not had personal contact with his New Jersey lawyers since his out-of-state transfer, and Rhode Island provides limited access to New Jersey legal materials.  For relief, Plaintiff seeks a transfer to New Jersey, declaratory judgment and damages.

After submitting his Complaint to this Court, Plaintiff informed the Court by letter that he was transferred to NJSP on May 5, 2008.  Plaintiff asserts in his letters that officials continued to retaliate after he returned to New Jersey, in that they lost his transcripts, confined him in close custody and fabricated  minor disciplinary infractions.  Plaintiff states that on July 17, 2008, Mee told him that Plaintiff would be returning to Rhode Island when his case was completed.

## STANDARD FOR SUA SPONTE DISMISSAL

The Court must (1) review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity, before docketing or as soon as practicable thereafter, and (2) sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

A complaint "must contain (1) a short and plain statement of the grounds of the court's jurisdiction . . . ; (2) a short and

plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought". Fed.R.Civ.P. 8(a). Also, "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989). The standard for failure to state a claim, in view of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), is as follows:

> Thus, under our reading, the notice pleading standard of Rule 8(a)(2) remains intact, and courts may generally state and apply the Rule 12(b)(6) standard, attentive to context and a[] showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. It remains an acceptable statement of the standard, for example, that courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinker, 292 F. 3d at 374 n.7. See also Twombly, 127 S. Ct. at 1969 n.8 (citing as consistent with its rejection of the "no set of facts" language the statement that "if, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial , establish a case which would entitle them to . . . relief, the motion to dismiss should not have been granted") (citation omitted).
>
> \*                    \*                    \*
>
> The issues raised by Twombly are not easily resolved, and likely will be a source of controversy for years to come. Therefore, we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context. Reading Twombly to impose a "plausibility" requirement outside the § 1 context, however, leaves us with the question of what it might mean. "Plausibility" is related to the requirement of a Rule 8 "showing." In its general discussion, the Supreme Court explained that the concept of a "showing"

> requires only notice of a claim and its grounds, and distinguished such a showing from "a pleader's bare averment that he wants relief and is entitled to it." Twombly, 127 S. Ct. at 1965 n.3.  While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.
>
> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading state, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

Phillips v. County of Allegheny, 515 F. 3d 224, 233, 234-35 (3d Cir. 2008) (citation and internal quotation marks omitted).

The sufficiency of this pro se pleading must be construed liberally in Plaintiff's favor, even after Twombly.  See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).  A pro se prisoner plaintiff needs to allege only enough factual matter (taken as true) to suggest the required elements of the claim asserted, but the Court need not credit a pro se plaintiff's "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F. 3d 902, 906 (3d Cir. 1997).

### DISCUSSION

A plaintiff may seek redress for violations of federal civil rights by a person acting under color of state law, by showing (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See 42 U.S.C.

6

§ 1983; West v. Atkins, 487 U.S. 42, 48 (1988); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

The Court construes the complaint as attempting to assert the following claims under § 1983: (1) Plaintiff's out-of-state transfer violated the Due Process Clause of the Fourteenth Amendment; (2) the transfer caused violation of Plaintiff's First Amendment right of access to courts by limiting his access to New Jersey legal materials and personal contact with his attorneys; and (3) defendants retaliated against Plaintiff for not providing information about the firearm by transferring him to an out-of-state prison, losing his property, placing him in close custody and fabricating disciplinary charges.

**A.   Due Process**

Plaintiff complains that his transfer to Massachusetts and then to Rhode Island was effected without adequate due process protection.  But an interstate prison transfer, even where it involves long distances, does not deprive an inmate of a liberty interest arising by force of the Due Process Clause itself.  See Olim v. Wakinekona, 461 U.S. 238, 247-48 (1983).  And, although a state may create a protected liberty interest, see Wilkinson v. Austin, 545 U.S. 209, 222 (2005); Sandin v. Conner, 515 U.S. 472, 484-86 (1995), a New Jersey inmate has no state-created liberty interest in avoiding an interstate transfer, since New Jersey law gives prison officials discretion to transfer an inmate to any

7

state which is a party to the Interstate Corrections Compact. See N.J.S.A. § 30:7C-5(a); see also Overturf v. Massie, 385 F.3d 1276, 1279 (10th Cir. 2004) ("incarceration in Oklahoma following conviction and sentencing in Hawaii state court cannot, by itself, form the basis for a due process challenge"); White v. Lambert, 370 F.3d 1002, 1013 (9th Cir. 2004) (inmate has no state-created liberty interest in avoiding transfer to out-of-state privately run prison).  Because prison officials did not deprive Plaintiff of a protected liberty interest by transferring him to Rhode Island and Massachusetts, Plaintiff had no constitutional right to due process regarding the transfer.

**B.   Access to Courts**

Plaintiff asserts that defendants violated his right of court access guaranteed by the First Amendment, applicable to states through the Fourteenth Amendment, by transferring him to an out-of-state prison, since the transfer limited visits by his New Jersey attorneys and access to New Jersey legal materials. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  Although "prisoners do not forfeit all constitutional protections," it is settled that "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limit these retained

8

constitutional rights." Bell v. Wolfish, 441 U.S. 520, 545, 546 (1979); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

The "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). But a prisoner lacks standing to pursue an access to courts claim unless he asserts that the alleged interference of prison officials, or shortcomings in the library or legal assistance program, "hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 352 (1996). Thus, to establish standing for an access to courts claim, prisoners must assert "(1) that they suffered an actual injury - that they lost a chance to pursue a nonfrivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). Moreover, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id. at 205-06.

For example, the Monroe Court affirmed dismissal of inmates' access to courts claims for failure to state a claim:

> In this case, the defendants confiscated all of the
> plaintiffs' . . . legal materials, including their legal
> briefs, transcripts, notes of testimony, exhibits,

9

>copies of reference books, treatises, journals, and personal handwritten notes.  In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike.  That claim, on its face, was insufficient to state a claim under Harbury.  So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous.  Nor did they maintain that they had no other remedy to compensate them for their lost claims.  Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Id. at 206 (citations and footnote omitted).

The Complaint here suffers the same pleading deficiencies as the complaints in Monroe.  Moreover, nothing in the Complaint indicates that Plaintiff could not communicate with his lawyers by using the mail and the telephone.  Thus, Plaintiff's access to courts claim fails and this Court will dismiss the claim for failure to state a claim upon which relief may be granted.  See Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police, 411 F.3d 427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost); Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir. 1997) (dismissing claim that corrections officers opened outgoing legal mail, as prisoner suffered no actual injury due to such alleged interference, where court received his papers and decided claim).  However, as Plaintiff may be able to remedy these deficiencies, this Court will grant Plaintiff 30 days to submit

an amended complaint stating an access to courts claim.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**C.   Retaliation**

An official who retaliates against an inmate for exercising constitutional rights may be liable under § 1983.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotes and cites omitted).  The prisoner must show that the "constitutionally protected conduct was 'a substantial or motivating factor'" in the decision to take adverse action. Rauser, 341 F. 3d at 333-34 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim is deficient.  It does not indicate that he engaged in conduct protected by the First Amendment.  Plaintiff asserts that officials took adverse action because he did not provide information concerning the firearm, but Plaintiff has no constitutional right to avoid providing information relating to security.  The Complaint also does not support an inference that constitutionally protected conduct was

11

a substantial or motivating factor in the decision to transfer him, the loss of his property, or the fabrication of disciplinary charges.  Finally, nothing in the Complaint suggests that these alleged adverse actions were sufficient to deter a prisoner of ordinary firmness from engaging in protected conduct.  Indeed, this lawsuit is an example of Plaintiff's undeterred efforts to challenge his transfer.  Under these circumstances, the Complaint fails to state a cognizable retaliation claim under § 1983, and the claim will be dismissed for failure to state a claim.  As Plaintiff did not engage in protected activity, the filing of an amended claim would be futile, and leave to amend this claim will not be granted.

## CONCLUSION

The Court will (1) grant Plaintiff's application to proceed in forma pauperis, and (2) dismiss the complaint without prejudice to submit an amended complaint within 30 days stating a proper access to courts claim.[1]

The Court will issue an appropriate order and judgment.

                                              s/ Mary L. Cooper
                                              **MARY L. COOPER**
                                              United States District Judge

Dated:  November 25, 2008

---

[1] A proposed amended complaint will be screened for possible dismissal.  If Plaintiff seeks to sue Rhode Island officials for deliberate indifference to his serious medical needs or other alleged constitutional violations, then he should do so by bringing an action in a court in Rhode Island.

12